The State of Mississippi vs. Thomas Harris et al.

1. Tax Collector: *Suit on his bond. Sections 1752, 1725 of Code of 1871.*
   Section 1725 of Code of 1871 makes it the duty of the auditor of public accounts and the district attorney to bring suit against defaulting tax collectors. If they fail so to do, then any tax payer, who will make himself liable for costs, is authorized to bring the suit under § 1752 of Code of 1871.

2. Same: Same: *Injunction against tax collector. Delinquent taxes. Liability of succeeding tax collector.   Case in judgment.*
   H. was sheriff and tax collector of Rankin county in 1867.   C. & M. were retail dealers, and tax payers, and as such enjoined H. from collecting taxes assessed against them.   The bill was dismissed in 1871.   H. had ceased to be sheriff, and two successors had followed him.   A short time before the dismissal of the bill he became sheriff again.   The decree dismissing the bill did not direct the collection of the taxes that had been enjoined.   H. applied to the board of supervisors for an order to collect these taxes, but no order was made. Three years afterwards, and after H. had again ceased to be sheriff, suit was brought against him to make him and his sureties liable on his official bond, executed in 1871.   *Held,* that there is no provision of the revenue laws of this state which imposes upon the sheriff the duty of pursuing delinquent tax payers after the regular period of collections prescribed by our revenue laws

has passed, unless they have been adjudged delinquent and insolvent by the board of supervisors; and an incoming sheriff has no power to collect back taxes except from persons whose names appear upon the delinquent and insolvent list, or from those whose taxes have been charged to and paid by him. But this power, as to the latter class, ceases with the term of office of the sheriff whose fault it was that they were not collected at the proper time.

ERROR to the Circuit Court of *Rankin* County.

Hon. ROBERT LEACHMAN, Judge.

The facts of this case material to the principles announced :are fully stated in the opinion of the court.

The rulings of the court below, the verdict of the jury, and ·the judgment rendered are assigned for error.

*Harris & George*, for plaintiff in error :

Any tax payer may institute suit against a tax collector. See Code 1871, § 1752. Harris was tax collector in 1866–7–8. ·Coulson enjoined the collection of his taxes. Harris had become sheriff again, in 1871, when the injunction was dis-;solved. Coulson and Meadows were both defaulting tax payers. Harris was requested to collect their taxes, and refused to ·do so.

The bond sued on was executed in 1871, and the state could .sue on whichever bond it saw fit. Harris could have collected by distress and sale. See Code, 1871, § 1691. See, also, Code, 1857, art. 12, p. 361; Code, 1871, § 1727.

*Cole & Henry*, on the same side :

Filed a brief, and written argument on the subject of plead-·ings ·in the case, and the rulings of the court in the pleadings .and upon the trial.

*A. R. Johnston*, for defendants in error :

Harris was enjoined, and pending that litigation his term of ·office expired and he never did collect the taxes. True it is he was·again sheriff when the injunction was dissolved, but he was not notified, or in any way directed, to collect these taxes. Harris notified the (then) board of police that he could and would collect the taxes if they would give him an order. But the board never did order him.

Why persist in the attempt to charge Harris with these

---
---

taxes? The law gives a lien on the property of the tax payer, and the state loses nothing. Code, 1871, § 1665. The lien still exists and the present collector can enforce it.

CHALMERS, J., delivered the opinion of the court.

Sundry citizens of Rankin county, suing in the name and for the use of the state of Mississippi, brought this suit against T. D. Harris, sheriff and tax collector of said county, and the sureties on his bond, to recover from them the taxes alleged to be due and unpaid by certain tax payers of the county, for which taxes, it was alleged, the sheriff had made himself liable by failing and refusing to collect the same. A motion was made to dismiss the case because it was not brought by the district attorney, nor authorized by the auditor of public accounts, as required by § 1725 of the Code. The motion was properly overruled because, while § 1725 makes it *the duty* of the auditor and district attorney to bring such suits, § 1752 *authorizes* any tax payer to do so who will make himself liable for costs. Following the example of counsel on both sides, we shall not undertake to go into the details of the exceedingly intricate and prolix pleadings which marked the progress of the cause in the court below, nor notice *seriatim* the various exceptions taken to the ruling of the court, but will attempt to grasp and dispose of the essential facts and principles which must control the ultimate result. In 1867 J. J. Coulson and C. H. Meadows, retail liquor dealers in Rankin county, filed their several bills in the chancery court of said county, enjoining the appellee, T. D. Harris, at that time sheriff and tax collector, from collecting the state taxes assessed against them as retailers. After a protracted litigation, during which the cause was brought to, and decided by, this court (43 Miss., 729), the injunction was dissolved and the bill dismissed in 1871. Four years had been consumed in the litigation. Harris (the appellee in the present litigation), against whom, as sheriff, the bill had been filed, had ceased to be sheriff, had been followed in the office by two successors, and had, a short time

before the dismissal of the bill, became sheriff again.   In the order dismissing the bill there was no decree rendered directing any collection of the taxes which had been enjoined.   Shortly thereafter Harris called the attention of the board of supervisors to the fact that the taxes were due and unpaid, and requested some order or authority to collect them, which authority the board, from some cause, declined to give.   Three years afterwards, and after Harris had ceased to be sheriff, this suit was brought against him and the sureties on the official bond given by him in 1871, to make him liable for his failure to collect the said taxes after the dismissal of the injunction bill.   It is admitted that the delinquent tax payers then had visible property out of which the taxes could have been made, and that Harris neither collected nor attempted to collect them. Was it his duty to do so, and did a failure by him to collect them make himself and sureties liable?

We cannot see that the fact that Harris was the sheriff against whom the injunction had been granted in 1867 in any manner affects the question of his duty in 1871.   While he was the same man, he was not the same officer.   His tenure of office had ceased.   Two successors had intervened, and his reappointment in 1871 imposed no other or greater liability or duty upon him than would have been imposed upon any other incumbent.

It will narrow the controversy, therefore, and facilitate its elucidation, to discard from view his former incumbency of the office, and consider whether any sheriff other than himself would, under the same circumstances, have been bound to collect the taxes.   This involves the general question whether an incoming sheriff is bound to collect all taxes uncollected by his predecessor, and whether a failure by him so to do subjects him and his sureties to a suit at the instance of the state, or any citizen suing in its name.

The affirmation of this proposition is maintained with great confidence by counsel for appellants.   The argument is that the assessment of taxes, when finally approved by the board

44

of supervisors, amounts to a judgment against each tax payer for the amounts severally assessed against them ; that these rolls remain always on file in the sheriff's office ; that the rolls show who has, and who has not, paid his taxes, and that an incoming sheriff is as much bound to proceed against those who have not paid as he is to execute writs of *fieri facias* which may be turned over to him by his predecessor.   In support of this position reference is made to § 1691 of Code, which provides that "all taxes remaining unpaid on the first day of December shall immediately be collected by the collector by distress and sale of any personal property belonging to the person assessed, on the first day of January preceding, or at any time afterwards."

It is further urged that by the laws regulating the collection of taxes from insolvent and delinquent tax payers (Code, p. 361, *et seq.*), it is provided that, notwithstanding the judgment of the board of supervisors declaring certain tax payers insolvent, and allowing the sheriff a credit for the amount assessed against them, nevertheless the tax collector shall, if possible, still collect such taxes, and to this end he shall retain a copy of the list of such delinquents, and thereafter, whenever he can find property real or personal, shall distrain and sell the same.   Section 1723.

It will be observed that these provisions relate solely to taxes due from persons who have been adjudged delinquent and insolvent by the board of supervisors, and a list of whom the sheriff is directed to retain.   It is as to these, and these only, that the section quoted makes it his duty thereafter to distrain and sell.   No other provisions of the statute have been pointed out, nor have we been able to find any which impose upon the sheriff the duty of pursuing delinquent tax payers after the regular period of collection prescribed by our revenue laws has passed.

The reason of this is obvious.   Our revenue laws form a complete system, where each successive step depends upon the preceding one.   Fixed periods are prescribed for commencing

and for ending the assessment, then for a return of the rolls to the board of supervisors, then for their examination, correction, and approval, then for their delivery to the sheriff. Upon the receipt of the rolls the sheriff proceeds at once to collect. A day is fixed, on or before which the tax payer is required to make payment, and all taxes then remaining unpaid are required to be collected by distress and sale of personal property, and, in default of personalty, the lands of the delinquent tax payer are required to be advertised for a specified period, and sold upon a specified day. When the sheriff has thus exhausted the entire property of the solvent tax payers, he presents to the board of supervisors, upon a day named in the statute, a list verified by oath of all those from whom he has found it impossible to make collections. The board passes upon this list, and, first charging the sheriff with the entire assessment roll, credits him with those deemed by it to be really insolvent, and returns the list to him. It is the persons on this list from whom he is authorized thereafter to make collections.

Under ordinary circumstances this system embraces every case that can arise, because the board of supervisors, with the assessment rolls and the list of delinquents as returned by the sheriff before them, will allow credit only for the names on the list, and such only of these as are believed by them to be actually insolvent. As to those deemed by the board not to be insolvent, and those on the assessment rolls, if any there be, who have not paid and yet who have not been reported on the list, the amounts due from them are charged up to the sheriff, and these amounts he must pay to the proper officers by a specified day. As we have seen, he is especially authorized and required to continue his attempts to collect, for the benefit of the state, the amounts due from those adjudged insolvent, and it may be, that for his own benefit he may continue collections from those whose taxes have been charged to and paid by himself, but this power, as to this latter class, must, we think, cease with the term of office of the sheriff by whose fault it was that

they were not collected at the proper time, and who has been compelled to make that default good out of his own pocket. When his successor comes into office, what burden does the law impose upon him? Can it be anything more than to continue the collection of amounts due upon the delinquent and insolvent list? The state can have no interest in imposing upon him the burden of collecting out of the tax payer those taxes which she has already received from his predecessor, and it would seem a most onerous hardship on him and his sureties to hold them liable for a failure to make such collections.

Undoubtedly, we think, in such a case no suit against him could be maintained. But it may be said that in the case at bar, the state has not received the taxes either from the tax payer or the sheriff. This may make a difference in the receipts at the treasury, but it can make none in the principle.

If the statute has imposed upon the incoming sheriff the duty of collecting only the taxes shown to be due on the insolvent list, his liability cannot be increased because a contingency has occurred, not foreseen or provided for by the law-giver.

We think the truth unquestionably is, that the law never contemplated, or intended to impose upon a tax collector, the duty of collecting taxes due in former years and not shown by the insolvent list. To such a liability, if it existed, there would be no limitation save that which would bar a debt of record, and it would probably render it impossible for any sheriff to give bond as tax collector, if it were understood that the sureties were to be bound, not only for all taxes assessed during the term of office of their principal, but for a failure to collect any which former tax collectors had left uncollected.

In the case at bar four years had passed since the taxes became due, and several intervening sheriffs had successively held office. If the fact that appellee was the man originally enjoined, during his former term, from collecting these taxes could impose upon him a duty which would not have devolved

upon another individual, it could not in the least increase the liability of his sureties.

Their obligation was for the performance by him of the official duties devolving upon him by virtue of his new tenure of office, unaffected by the fact that he had theretofore occupied the same position.

Whether, under the circumstances of the case, he could have collected these taxes, either with or without an order of the chancery court directing him to do so, or whether the state was remitted to an action of debt against the parties for their collection, we will not now decide. We only mean to say that we can find no provision of the statute nor principle of law which rendered it such an official duty upon his part as that a failure to perform it renders him liable to suit on his bond.

The analogy suggested by counsel between the assessment rolls in the sheriff's hands and an unexecuted *fieri facias* is a good one, but is not pursued to its legitimate result.

If the assessment roll be deemed a writ of *fieri facias*, it has a return day specified by statute. When the return day comes the sheriff makes his report, and the *fieri facias* becomes *functus officio*. But the insolvent list which he is ordered to retain, and upon which he is empowered to make further collections, is in the nature of an *alias fieri facias*, without any return day, and therefore constitutes an indefinite extension of authority to himself and successors to collect the amounts embraced in it. If the law has failed to make provisions for a contingency like the one presented by the case at bar, the *casus omissus* must be supplied by legislative enactment, and not by judicial decision.

The rulings of the court below upon the pleadings and upon the admission and exclusion of evidence were not free from error : but the jury found for the tax collector, and as, under our view of the law, no other result was possible, the judgment is affirmed.